The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Benad ABIODUN, Defendant–Appellant.

No. 02CA1484.

Colorado Court of Appeals,
Div. II.

Aug. 28, 2003.

Rehearing Denied Oct. 16, 2003.*

Certiorari Denied April 5, 2004.

* Webb, J., would grant.

Ken Salazar, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Keyonyu X O'Connell, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NEY.

Defendant, Benad Abiodun, appeals the judgment of conviction entered upon jury verdicts finding him guilty of two counts of possession of a controlled substance and two counts of distribution of a controlled substance. He also appeals the sentence. We affirm in part and vacate in part.

On June 21, 2001, a confidential police informant went to defendant's home to purchase cocaine. Defendant left his home to obtain cocaine from his source and later returned with the cocaine. The informant left defendant's home with the cocaine shortly thereafter.

On June 27, 2001, the confidential informant arranged another controlled buy with defendant. Defendant again left his home to obtain cocaine from his source and, within a half hour of returning home, met the informant and completed the sale. Defendant was arrested and subsequently charged.

At trial, the jury found defendant guilty of all charges and specifically found that the amount of the controlled substance was between 25 grams and 450 grams or one ounce or was represented to be of such an amount.

## I.

Defendant contends the trial court erred in imposing a mandatory sentence for the June 27 acts because there is insufficient evidence to support the jury's finding that he possessed and distributed at least twenty-five grams or one ounce of a schedule II controlled substance. We disagree.

A defendant must be sentenced to at least the minimum of the presumptive range if convicted of possessing or distributing "an amount that is or has been represented to be" at least 25 grams or one ounce, but less than 450 grams of a schedule II controlled substance. Section 18–18–405(3)(a)(I), C.R.S.2002.

The sole evidence in the record establishing the requisite amount is defendant's statement during interrogation after the arrest that he went to a store to sell "about an ounce of crack cocaine."

## A.

The People contend that we need not review the sufficiency of the evidence of quantity because it is not a substantive element of the offense and the jury instructions clearly included the quantity as a fact that must be proved beyond a reasonable doubt. We disagree.

While the quantity is not a substantive element, it still must be proved beyond a reasonable doubt. *See Whitaker v. People,* 48 P.3d 555 (Colo.2002); *People v. Martinez,* 36 P.3d 201 (Colo.App.2001). Accordingly, notwithstanding the jury instructions, we must evaluate whether there is evidence in the record to support the jury's determination of this fact. *See, e.g., People v. Bueno,* 188 Colo. 396, 534 P.2d 1196 (1975).

### B.

Defendant contends that the legislature intended § 18–18–405(3)(a)(I) to cover only representations regarding the amount made during the criminal transaction. We disagree.

In construing a statute, our primary task is to ascertain and give effect to the intent of the General Assembly. To discern that intent, we look first to the language of the statute, giving words and phrases their plain and ordinary meaning. *People v. Dist. Court*, 713 P.2d 918 (Colo.1986).

If the statutory language unambiguously sets forth the legislative intent, we need look no further to determine the statute's meaning. However, if the language is ambiguous, then we may rely on other factors, such as legislative history, to determine the meaning of a statute. *Martin v. People*, 27 P.3d 846 (Colo.2001).

Here, the statutory language, "or has been represented to be," does not explicitly state whether the representations must be made at, during, or before the sale, or whether they may be made after the defendant's arrest. Therefore, we conclude that the language is ambiguous as to the timing of the relevant representations. Accordingly, we look to the legislative history to ascertain the intent of this section.

The legislative history indicates that the General Assembly intended to coordinate the penalties with the "level of involvement" of the offender. It sought to treat differently those who are engaged in a transaction for a critical level, such as an ounce, a pound, or a kilogram, which typically indicates the level of the defendant's involvement in the drug trafficking enterprise. The language at issue here was targeted at offenders who were involved as "ounce dealers," but sold an amount below twenty-five grams in an attempt either to cheat the purchaser or to avoid greater penalties. Hearings on H.B. 97–1077 before the House Judiciary Committee, 61st General Assembly, First Session (Jan. 16, 1997)(testimony of Bob Grant, District Attorney for 17th Judicial District).

Accordingly, because the statute is intended to target offenders whose level of involvement was that of an "ounce dealer," and all representations regarding the amount are indicative of an offender's level of involvement in a transaction, we conclude that the legislature did not intend to limit representations to those made during the transaction. Instead, we construe the statute as covering all representations made by a defendant regarding the amount.

### C.

In evaluating the sufficiency of the evidence to support this finding beyond a reasonable doubt, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People*, 756 P.2d 945, 950 (Colo. 1988).

Here, to establish the amount of cocaine, the prosecution relied on defendant's representation during interrogation after the arrest that he went to a store to sell "about an ounce of crack cocaine."

Based upon our interpretation of the statute, we conclude that this evidence supports the jury's finding that the amount of cocaine was represented to be an ounce. Accordingly, we conclude that the trial court did not err here in imposing the mandatory sentence.

### II.

Defendant contends that the trial court erred by not merging his convictions for possession into his convictions for distribution. We agree.

Possession of a controlled substance has traditionally not been considered a lesser included offense of distribution of the controlled substance. *People v. Bloom*, 195 Colo. 246, 248, 577 P.2d 288, 290 (1978)(not lesser included because "possession and sale are directed at different sorts of criminal conduct"); *People v. Holcomb*, 187 Colo. 371, 532 P.2d 45 (1975); *see also People v. Thurman*, 948 P.2d 69 (Colo.App.1997).

However, in *Patton v. People*, 35 P.3d 124 (Colo.2001), the supreme court concluded

that the convictions for possessing a controlled substance and manufacturing a controlled substance merged because, under the facts of that case, the possession was incidental and necessary to manufacturing and the acts occurred as part of the same transaction and during the same time period. *See also People v. Villapando*, 984 P.2d 51 (Colo.1999) (convictions for possession and use must merge because no possible scenario exists where use of a controlled substance can occur without possession). Accordingly, we read *Patton* as requiring merger of convictions where the facts establish that the acts were committed during the same transaction and the same time period and the lesser offense was necessary and incidental to the greater.

Here, the record reflects that for both the June 21 and June 27 transactions, defendant acquired the controlled substances after contact by the informant and possessed them for the sole purpose of their distribution during the same time period and as part of one continuous transaction. Thus, the only evidence that defendant possessed controlled substances was that he acquired them from a third party for distribution to the informant. Accordingly, under the rationale of *Patton*, we conclude that the possession was incidental and necessary to the distribution, and the convictions for possession must merge with the convictions for distribution.

## III.

■ Defendant contends that the prosecutor's questions regarding defendant's national origin constituted prosecutorial misconduct and require reversal of his convictions. We are not persuaded.

Because defendant did not assert in the trial court that the prosecutor's questions were prejudicial and required a new trial, we review for plain error. *See People v. Avila*, 944 P.2d 673 (Colo.App.1997). Under this review, we consider the alleged improper questioning in the context of the testimony as a whole and in light of the evidence, and we evaluate it under the standards for prosecutorial misconduct. *See People v. Ned*, 923 P.2d 271 (Colo.App.1996).

■ Prosecutorial misconduct will only rise to the level of plain error if it is "flagrantly, glaringly, or tremendously improper." *People v. Vialpando*, 804 P.2d 219, 224 (Colo.App.1990).

Here, in attempting to establish that defendant was not ignorant of American language and culture, the prosecutor asked him, "You are not a U.S. citizen, is that right?" The trial court sustained defense counsel's objection to this question based on relevance. The prosecutor then asked defendant about his level of education and the time he had lived in the United States.

Upon review of the record, we conclude that the information elicited was repetitive of that obtained on direct examination and was relevant to the issues at trial. Thus, the questioning was not prejudicial, flagrant, or glaringly or tremendously improper.

The judgment and sentence as to possession of a controlled substance are vacated. The judgment and sentence as to distribution of a controlled substance are affirmed.

Judge CASEBOLT and Judge WEBB concur.